UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANETTE HICKS
O/B/O A.D.H.,

                        Plaintiff,

v.                                                        CASE # 18-cv-00467

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>ELIZABETH ANN HAUNGS, ESQ.<br>LEWIS L. SCHWARTZ, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS J. CANNING, ESQ.<br>FRANCIS D. TANKARD, ESQ<br>LAUREN ELIZABETH<br>MYERS, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is GRANTED, Defendant's motion is DENIED, the decision of the Commissioner be

REVERSED, and this matter be REMANDED for further administrative proceedings consistent with this order.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

A.D.H. was born on July 29, 2007 and was 9 years old at the time of the hearing. (Tr. 153). Generally, plaintiff alleges A.D.H.'s disability consists of anxiety, social fear, memory impairment, learning disorder, and select mutism. (Tr. 157). The alleged disability onset date is February 1, 2008. (Tr. 153).

   B.   **Procedural History**

On March 18, 2014, plaintiff[1] protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (Tr. 128-35). Plaintiff's application was initially denied, after which a timely request was made for a hearing before an Administrative Law Judge ("the ALJ"). On September 19, 2016, plaintiff appeared before the ALJ, Lynette Gohr. (Tr. 40). On January 18, 2017, ALJ Gohr issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 16-36). On February 23, 2018, the Appeals Council ("AC") denied plaintiff's request for review. (Tr. 1-5).

   C.   **The ALJ's Decision**

Generally, ALJ Gohr made the following findings of fact and conclusions of law:

1. The claimant was born on June 29, 2007. Therefore, he was a school-age child on March 18, 2014, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since March 18, 2014, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: Attention Deficit/Hyperactivity Disorder (ADHD), selective mutism, and anxiety disorder. (20 CFR 416.924(c)).

---

[1] From herein the child, A.D.H., will be referred to as "plaintiff".

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
(a) The claimant has less than marked limitation in acquiring and using information.
(b) The claimant has less than marked limitation in attending and completing tasks.
(c) The claimant has less than marked limitation in interacting and relating with others.
(d) The claimant has less than marked limitation in moving about and manipulating objects.
(e) The claimant has less than marked limitation in the ability to care for himself.
(f) The claimant has no limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since March 18, 2014, the date the application was filed (20 CFR 416.924(a)).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially three arguments in support of the motion for judgment on the pleadings. First, plaintiff argues the ALJ relied on stale evidence concerning the language disorder and limitations. (Dkt. No. 12 at 1 [Pl.'s Mem. of Law]). Second, the ALJ failed to reconcile limitations of opinions given weight. (*Id.*). Third, the ALJ did not properly assess the credibility of subjective complaints and the mother's testimony. (*Id.*).

### B. Defendant's Arguments

In response, defendant makes two arguments. First, defendant argues the ALJ properly evaluated the opinion evidence, including teacher questionnaires. (Dkt. No. 19 at 11 [Def.'s Mem. of Law]). Second, the ALJ properly considered the consistency of plaintiff's allegations with overall evidence. (Dkt. No. 19 at 22).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of

functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[2]

## IV. ANALYSIS

Plaintiff argues the ALJ committed multiple errors in regard to the language disorder. In her decision, the ALJ found the severe impairments of Attention Deficit/Hyperactivity Disorder (ADHD), selective mutism, and anxiety disorder. (Tr. 21). First, plaintiff argues the ALJ erred by not finding plaintiff's diagnosed mixed receptive and expressive language disorder severe compounded by the additional error of relying on stale evidence to minimize the impact of the language disorder. (Dkt. No., 12 at 16).

Defendant argues there is only one report that diagnosis plaintiff with a mixed receptive and expressive language disorder and no evidence to support a language impairment. (Dkt. No. 19 at 20). The specific report containing that diagnosis was a consultative examination in June 2014, which was based in part on the administration of the CELF-IV test, more fully discussed below. (Tr. 296). The "mere presence of a disease or impairment or establishing that a person has been

---

[2] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)). However, regardless of terminology used, an impairment does not need to be found by multiple sources to be severe. Defendant's argument that psychological testing and psychiatric records did not indicate any speech or language disorders is unavailing because the purpose of that testing and treatment was to diagnose and treat psychiatric needs. (Dkt. No. 19 at 20-21). In this case, the consultative examiner that diagnosed the speech impairment was a qualified speech/language pathologist, that per regulation, may diagnose a speech and language disorder. *See* 20 C.F.R. §404.1502. Further, the Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016). Despite lack of diagnosis labeling the issue, reference to a speech evaluation in 2010 indicates there was a history of speech difficulties. (Tr. 275). As noted in the decision, plaintiff was already receiving speech and language therapy at school through The Speech Improvement Program at a frequency of six times per month in a group setting. (Tr. 193).

In this case, there were two CELF-IV tests that objectively found severe limitations in language skills. Plaintiff underwent a speech-language consultative evaluation with Elizabeth Mobley, licensed speech language pathologist, in connection with her disability benefits application on June 28, 2014. (Tr. 296-300). The Clinical Evaluation of Language Fundamentals,

Fourth Edition (CELF-IV) test indicated a receptive language score of 67, an expressive language score of 63, and a total language score of 64, suggesting severely delayed language skills. (Tr. 297-98). The evaluation report listed a diagnosis of mixed receptive and expressive language disorder. (Tr. 296). Her condition was listed as severe. (Tr. 296). In December 2014, plaintiff was evaluated by the school and again administered the CELF-IV. The report states the scores on the subtests and overall composite scores demonstrate a range of severe impairment to average ability compared to peers her chronological age. (Tr. 194). Additionally, her 2016-2017 Individualized Education Plan (IEP) states speech and language therapy were to be given six times a month for 30 minutes in a small group setting. (Tr. 207).

Substantial evidence indicates there was a severe speech and language disorder, yet defendant asserts such a disorder is harmless because selective mutism was found as a severe impairment and therefore language difficulties were considered throughout the decision. (Dkt. No. 19 at 20). This argument is not persuasive because the domains are more inclusive than just the ability to speak. The regulations acknowledge that to communicate with others a child needs both speech and language. Particularly, the regulations provide that in the domain of interacting and relating with others, school-age children between the ages of six and twelve "should be able to develop more lasting friendships with children [their] age ... [,] should begin to understand how to work in groups to create projects and solve problems ... [,] should have an increasing ability to understand another's point of view and to tolerate differences[, and] ... should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv). Under the regulations, impairments in expressive and receptive language ability are germane not only to the domain interacting and relating with others but also acquiring and using information. *See id.;* SSR 09-5p,

74 Fed. Reg. at 7516; *accord McClain v. Barnhart,* 299 F.Supp.2d 309, 326 n. 18 (S.D.N.Y.2004) ("a child with speech-language deficits at the marked level will normally be found to have a marked limitation in the domain of interacting and relating with others, even though socially well-behaved").

Looking to the ALJ's decision, her analysis begins by stating the last speech evaluation at school was in 2010 and language skills were judged to be mildly delayed. (Tr. 23). After discussing the teacher questionnaires, the ALJ then cited a school speech therapist report, from Marie Meyer, in May 2014, that stated plaintiff was not provided speech therapy through the Committee on Special Education and had mild delays in receptive and expressive language and vocabulary. (Tr. 25). The ALJ failed to note that this opinion was based solely on an "informal" assessment and that Ms. Meyer stated in the narrative that testing had not been done since 2010. (Tr. 275-279). The ALJ however gave significant weight to this opinion stating it "contains a speech and language assessment consistent with the record". (Tr. 27). Apparently this opinion is what the ALJ relied on in finding the speech and language impairment not severe and when considering limitations in the domains that may be related to speech and language. However, as discussed above, there are objective test results and assessments from the consultative examiner and school that are not consistent, as well as contradictory subsequent school records indicating special education services for speech and language difficulties. The ALJ simply stated the CELF-IV scores from the consultative examination were "inconsistent with the evaluation by the claimant's speech therapist". (Tr. 27). While ALJs do not need to cite all evidence and are entitled to resolve conflicts in the record, their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988)

(citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004).

The ALJ never addressed the December 2014 speech and language evaluation performed by the school district, never reconciled that opinion with the December 2015 IEP, or discussed the 2016-2017 IEP that states plaintiff is to attend speech therapy six times a month and details speech and language achievement. (Tr. 197-202, 211-222). The IEP dated December 10, 2015 indicated receptive language skills remained stronger than expressive language skills. (Tr. 212). It was indicated she needed to expand on her expressive language; verbal output; and confidently and independently take turns to continue a conversation. (Tr. 212). As far as her management needs, plaintiff required prompting for verbal output in a group setting and reminders and repetition of directions; explicit directions when presented academic and independent tasks; and modeling/restating directions for independent work tasks. (Tr. 213). The 2016-2017 IEP stated plaintiff has simplistic sentences in written language, 60% accuracy when using irregular past tense verbs in a sentence, conjugate verb tense from present to past and future during structured language tasks in 67% to 75% of trials, use of simple sentences and very quiet voice expressively, simple responses when volleying back and forth with the therapist, and general weakness with expressive language skills. (Tr. 215-216). The IEP states that plaintiff has a "very difficult time with multi-stepped work" and need to have a one-to-one explanation and extra time. (Tr. 216). Specifically, in mathematics it is noted she shows a great need for reeteaching, inconsistent ability to retain newly learned skills, and difficulty with math vocabulary. (*Id*.). The ALJ cited the entire exhibit that contained the updated IEP in the domain of acquiring and using information, but she stated only that plaintiff had a very difficult time with multistep problems and received occupational therapy. (Tr. 30). Although many of the limitations and services are similar to the

April 2014 IEP, the lack of progress and continued difficulties are contrary to the ALJ's statements of "improvement" to discredit teacher opinions in the file. (Tr. 25). The decision also does not include any reference to the New York State ELA and Math State Assessment scores in August 2016. Plaintiff did not meet the state standard in either area and performed better than only 6% and 2% (respectively) than students in her grade in the district. (Tr. 225-226).

It was an error for the ALJ to rely on the "informal assessment" of the speech therapist, which was based in part on 2010 findings, over subsequent objective testing and school records which are contrary to that opinion. *Hawkins v. Colvin,* 2016 WL 6246424, *3 (W.D.N.Y. Oct. 26, 2016) (remanding because, inter alia, "the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to Plaintiff's degenerative disc disease becoming symptomatic"); *Gray v. Colvin,* No. 1:16-CV-00231 (MAT), 2017 WL 562152, at *3 (W.D.N.Y. Feb. 11, 2017)(medical opinion rendered three years before the decision and prior to multiple surgeries was stale). The speech therapist provided no examples or evidence to support her opinion but for referencing testing which had been done in 2010. There are no treatment or therapy records from interactions with the plaintiff. The CELF-IV however is specifically considered an acceptable standardized test to measure performance in the domain of Interacting and Relating to Others. *Miles ex rel. J.M. v. Astrue*, 775 F. Supp. 2d 715, 727 (S.D.N.Y. 2011). The ALJ relied on the stale opinion of the school therapist and did not properly consider the speech and language impairment in the relevant functional domains.

Plaintiff also argues the ALJ failed to reconcile limitations to which she gave weight. (Dkt. No. 12 at 19). For instance, the record contains a teacher questionnaire from May 2014 and two from September 2016. The ALJ stated she gave "some weight" to the teachers' questionnaires but "greater weight" to the 2016 statements. (Tr. 24-25). These statements identified up to "very

11

serious" problems in understanding and participating in class discussions, providing organized explanations and adequate descriptions, learning new material, comprehending and doing math problems, applying problem solving skills in class discussions, carrying out multistep instructions, completing work accurately without careless mistakes, working at a reasonable pace/finishing on time, and knowing when to ask for help. (Tr. 398-399, 407). The statements also indicated up to "serious problems" in understanding school and content vocabulary, comprehending oral instructions, reading and comprehending writing, expressing ideas in written form, learning new material, recalling and applying previously learned material, applying problem solving skills in class discussions, focusing long enough to finish assigned activity or task, and carrying out multistep instructions. (Tr. 398-399, 407-408). The ALJ cites the 2016 teachers' questionnaires in the domains of Acquiring and Using Information and Attending and Completing Tasks, stating they "note ongoing issues in this area of significance." (Tr. 30-31). However, the ALJ found only less than marked limitations in those domains despite regulations defining a "marked" limitation as "interfering seriously" and an "extreme" limitation as "very seriously" interfering with functioning. *See* 20 CFR 416.926a(b)(2)-(b)(3).

Although teachers are not medical sources, the ALJ is permitted to consider the information provided and weigh opinions regarding limitations and functioning. *See* SSR 06-03p, 2006 WL 2329939 (August 9, 2006) (noting that information from "other sources," including teachers, are "valuable sources of evidence for assessing impairment severity and functioning," and that the ALJ "generally should explain the weight given to opinions from [ ] 'other sources' "). The ALJ concluded without any elucidating explanation why the serious and very serious problems in the two domains were not supportive of a marked limitation. The SSR is clear that there is a "whole child" approach for determining functional equivalency and that the rating of limitation of a

12

domain is not an "average" of what activities the child can and cannot do. *See* SSR 09-1p 2009 WL 396031 (February 17, 2009).

Although this Court must accept the ALJ's reasonable interpretation of evidence, the ALJ has not provided any explanation suggesting how a reasonable fact-finder could interpret these opinions as supportive of a less than marked, rather than marked, limitation in the domains of acquiring and using information and interacting and relating with others. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 173 (N.D.N.Y. 2010)("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.' ") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). This Court cannot say that the evidence in the record as a whole definitively supports marked limitations, but the ALJ failed to provide the requisite explanation to enable review of whether her finding in the domains was supported by substantial evidence.

Plaintiff has additional arguments pertaining to the credibility finding of plaintiff's subjective complaints. (Dkt. No. 12 at 22). However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary the Court declines to reach that issue. *Morales v. Colvin*, No. 13-CV-06844 (LGS)(DF), 2015 U.S. Dist. LEXIS 58246, at *80 (S.D.N.Y. Feb. 10, 2015) (The court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dost. LEXIS 58203 (S.D.N.Y. May 4, 2015).

**ACCORDINGLY, it is**

> **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is
> **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 4, 2020  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge